**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 07-80138-CIV-MIDDLEBROOKS/JOHNSON**

SAMIRA SULLIVAN, on her own
Behalf and others similarly situated,

      Plaintiffs,

v.

LANA MARKS LTD, INC., a Florida
Corporation, and LANA J. MARKS,
Individually,

      Defendants.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION**
**TO ENFORCE SETTLEMENT AGREEMENT AND FOR**
**ENTRY OF JUDGMENT FOR THE PLAINTIFFS**

      The Defendants Lana Marks LTD Inc., a Florida Corporation and Lana J. Marks,

individually by and through her undersigned attorney, files this their response to the Plaintiffs'

Motion to Enforce Settlement Agreement and for Entry of Judgment for the Plaintiffs filed on

October 3, 2007.

**FACTS**

1.     The Court entered an Order on October 10, 2007 on the Plaintiffs' motion

        to enforce the settlement agreement and for the entry of a judgment for the

        Plaintiffs and scheduled this for an evidentiary hearing to determine the

        damages on Thursday November 1, 2007 at 4:00 p.m. at the West Palm

        Beach Courthouse.

2.  According to the civil docket entries, the Defendants' attorney filed motions to withdraw on or about May 31, 2007  (DE 16) and July 24, 2007 (DE 35) and on July 27, 2007 (DE 36).

3.  The Court denied these motions to withdraw without prejudice on July 30, 2007  (DE 40).  A renew notice to withdraw were filed on July 31, 2007. (DE 42).

4.  The Court granted the Defendants' attorney's motion to withdraw on August 30, 2007.  (DE 43).

5.  The Court ordered a rule to show cause on September 20, 2007 (DE47).

6.  The Defendants engaged the law firm of Frank J McKeown P.A. on or about August 16,  2007. (Exhibit 1).

7.   The Defendants' attorney immediately made a valid offer of settlement of this claim for $20,000.  This offer was accepted by the Plaintiffs on August 29, 2007. (Exhibit 2).

8.  However, the amount in the proposed settlement agreement prepared by the Plaintiffs and forwarded to the Defendants' attorney was for  $22,000, not $20,000..

9.  This proposed agreement was amended by the Plaintiffs' attorney to $20, 380.00 which was rejected by the Defendants on August 29, 20007 after Defendants' attorney brought it to the attention of the Plaintiffs' attorney that the settlement figure was $20,000.00.

10. Finally, the proposed agreement was again amended by the Plaintiffs' attorney to conform with the original agreed amount of $20,000 on September 4, 2007.

11. On September 19, 2007, the Defendants' attorney advised the Plaintiffs' attorney the proposed settlement agreement should also reflect the issues raised by the counterclaim and advised the Plaintiffs' attorney that the Defendants had delivered a check to his office in the amount of $20,000 payable to Plaintiff's trust fund. (Exhibit 3).

12. On September 19, 2007, the Defendants' attorney advised the Plaintiffs as to how the paragraph should be revised to accomplish a mutual settlement agreement as to the parties making disparaging remarks about each other.

13. On September 25, 2007, the Plaintiffs' attorney advised their client was "out of town" and to contemplate a settlement correction was not within the terms of the agreement and was unacceptable without further consideration to the Plaintiff. (Exhibit 4).

14. On September 26, 2007, the Defendants' attorney again advised the Plaintiff's attorney the revised agreement did not address the counterclaim filed by the Defendants and should be recited in the settlement agreement. (Exhibit 5).

15. Defendant's attorney continues to hold in his possession a check for $20,000.00 and has authority to release the check upon proper revision of the settlement agreement.

16.    Due to the fact the monetary amount of the settlement was accomplished, except for minor revision to the proposed settlement agreement, the Defendants' attorney did not filed a formal notice of appearance. The Defendant's attorney was not copied with any of the recent pleadings until the Defendants' attorney received a copy of the Court's order of October 10, 2007 attached to the Plaintiffs' Motion for Summary Damages on October 25, 2007.

17.    The Plaintiffs filed a motion to enforce the settlement on October 23, 2007 but failed to provide the Defendants' attorney a copy of this motion. Although, the Defendant's attorney at that time was not attorney of record, the Plaintiffs' attorney was fully aware that Defendants were represented by this law firm and the parties had entered into a settlement of all claims for $20,000, once the proposed settlement agreement was revised to include the issues alleged in the counterclaim.

## CONCLUSION

Defendants' attorney entered into good faith negotiations to resolve this claim with the Plaintiffs. The parties reached an agreed amount of settlement. Unfortunately the Plaintiffs attempted to renege on this agreement by twice increasing the settlement amount which was forwarded in the proposed settlement agreement to the Defendants. When the Defendants brought this to the attention of the Plaintiffs as to the agreed settlement amount and further advised that the counterclaim had not been properly addressed in the proposed settlement agreement, the Plaintiffs again attempted to

unilaterally increase the settlement amount.  The only issue was the wording of the proposed settlement agreement and the Defendants were requesting this proposed agreement properly address the counterclaim.

Defendants should not now be penalized or taken advantage of by the failure of the Plaintiffs after a settlement amount was agreed upon.  To refuse to provide a properly worded settlement agreement and therefore subject the Defendants to possible further monetary damages when the parties entered into a settlement agreement with the exception of the wording of the settlement agreement.

Respectfully submitted,

By: _____
FRANK J. McKEOWN, JR., Esquire
Florida Bar No.: 053279

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk, USDC, Southern District and furnished *via* U.S. Mail to: **SHAVITZ LAW GROUP,** 1515 So. Fed. Hwy., Ste. 404, Boca Raton, FL 33421, on this the date of **November 1, 2007.**

The Law Office of Frank J. McKeown, Jr.,P.A.
Counsel for Defendants
Concourse Towers 1 – Suite 701
2000 Palm Beach Lakes Boulevard
West Palm Beach, FL  33409
Telephone:    561.832.5650
*Facsimile:*    561.688.9985


By: _s/Frank J. McKeown, Jr._____
        FRANK J. McKEOWN, JR., Esquire
        Florida Bar No.: 053279

LAW OFFICES OF

# FRANK J. MCKEOWN, JR., P.A.

CONCOURSE TOWER 1
SUITE 701
2000 PALM BEACH LAKES BOULEVARD
WEST PALM BEACH, FL 33409

FRANK J. McKEOWN, JR.
BOARD CERTIFIED CIVIL TRIAL ATTORNEY
SPECIALIZING IN EMPLOYMENT LITIGATION

Telephone No. (561) 832-5650
(561) 688-9833
(561) 721-3724
Facsimile No. (561) 688-9985

August 16, 2007

**REGULAR U.S. MAIL AND**
**VIA FACSIMILE**
Mr. Greg Shavitz
Shavitz Law Group P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL  33432

     *Re:*   *Sullivan v. Lana Marks. LTD, Inc.*

Dear Greg:

I have been approached by Mrs. Lana Marks to in the above style matter.

The file she provided me is voluminous.  There seems to been several attorneys involved.  The purpose of this letter is to ask you to call me to see if there is something we can do to resolve this matter at this time prior to my enter in an appearance and have to review the entire file.

So please call me as soon as possible.

Very truly yours,

Frank J. McKeown, Jr.

FJMcK/mk

EXHIBIT

LAW OFFICES OF

# FRANK J. MCKEOWN, JR., P.A.

CONCOURSE TOWER 1
SUITE 701
2000 PALM BEACH LAKES BOULEVARD
WEST PALM BEACH, FL 33409

FRANK J. McKEOWN, JR.
BOARD CERTIFIED CIVIL TRIAL ATTORNEY
SPECIALIZING IN EMPLOYMENT LITIGATION

Telephone No. (561) 832-5650
(561) 688-9833
(561) 721-3724
Facsimile No. (561) 688-9985

August 29, 2007

Mr. Greg Shavitz
Shavitz Law Group P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL  33432

  *Re:* *Sullivan v. Lana Marks. LTD, Inc.*

Dear Greg:

  I received the email regarding the above settlement.  I negotiated with you $20,000 for all claims.  I was never made aware of an additional $380 in commissions. After we agreed on the $20,000 figure I was able with a great deal of difficulty to convince Ms Marks to go to the $20,000 figure.  She is sending me a check for that amount.  I will not and can not under any circumstances go back to her for another $380, as Ms. Marks was adamant about the $20,000 figure.

  Also I received the fax of the proposed settlement agreement and paragraph 3 would have to be changed.  The check will be made out to Shavitz Law Group P.A.   Please revise that paragraph.  Also since this is a joint release because there is a counterclaim the settlement really should recite the counterclaim and the paragraph in there regarding the fact that the Plaintiffs will not in the future make any adverse comments or statements regarding the defendants.  That probably should come after paragraph 5.  With these changes I will have my client sign and forward a check with the signed release.

       Very truly yours,

       Frank J. McKeown, Jr.

FJMcK/mk

**EXHIBIT**
*2*

LAW OFFICES OF

# FRANK J. MCKEOWN, JR., P.A.

CONCOURSE TOWER 1
SUITE 701
2000 PALM BEACH LAKES BOULEVARD
WEST PALM BEACH, FL 33409

FRANK J. McKEOWN, JR.
BOARD CERTIFIED CIVIL TRIAL ATTORNEY
SPECIALIZING IN EMPLOYMENT LITIGATION

Telephone No. (561) 832-5650
(561) 688-9833
(561) 721-3724
Facsimile No. (561) 688-9985

September 19, 2007

*VIA U.S. MAIL AND FACSIMILE*
Mr. Greg Shavitz
Shavitz Law Group P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL  33432

  *Re: Sullivan v. Marks*

Dear Mr. Slavitz:

  Unfortunately we have a major problem with the terms of the Settlement Agreement that you provided.

  It seems that recently in fact within the last two (2) weeks Ms. Marks has determined that Ms. Sullivan has made numerous contacts with customers of Lana Marks Ltd. Inc. locally, in the United States and internationally using Lana Marks Ltd. Customer List which she has in her possession.   Furthermore, she has made disparaging remarks to certain individuals on Worth Avenue. Unfortunately this is unacceptable to my client and there is a non compete agreement in effect

  My client insists on a more specific statement and has revised Paragraph 6 as follows:

  The Plaintiffs acknowledge that the Defendant's good reputation within the community, United States, and worldwide is extremely important to the Defendant.  Therefore, the Plaintiffs specifically agree that they will not make any disparaging remarks or encourage or induce others to make disparaging remarks in any form of communication either verbally or in writing.  This includes

EXHIBIT
3

Greg Shavitz
Re: *Sullivan vs. Marks.*
September 19, 2007
Page 2 of 2

not only local United States and worldwide customers of the Defendant, but anyone at all including but not limited to current or former employees of the Defendant. Also, Plaintiff Sullivan specifically agrees not to contact customers of the Defendant's.

This modification if acceptable would satisfy my client's concerns about the remarks being made by Ms. Sullivan and the use of the customer list. As previously stated my client has issued a check to your account which remains in my possession until we revise the settlement agreement as set forth above.

Your immediate attention to this matter would be appreciated so we can finally resolve this best interests of the parties.

Very truly yours,

Frank J. McKeown, Jr.

FJMcK/mk
Cc: Ms. Marks

EXHIBIT
3

## Stacey Cohen

| | |
|---|---|
| **From:** | Stacey Cohen |
| **Sent:** | Tuesday, September 25, 2007 3:46 PM |
| **To:** | 'frankmckeown@juno.com' |
| **Subject:** | Sullivan v. Lana Marks |

**Attachments:** Sullivan-St Claire Executed SA.pdf

SENT VIA FACSIMILE ALSO

Frank:
My client has been out of town since your last correspondence regarding the disparagement issues.
Nevertheless, these were not terms contemplated in settlement, and cannot now become terms of the
Agreement, without further compensation to my client for this additional consideration she would be providing to
Lana Marks. (Not to mention the additional attorneys' fees that this process will require)

Notwithstanding the above, your client has been and continues to be in breach of the Agreement. I have
prepared a Motion to Enforce which will be filed before the end of the week if the check is not forwarded to us
immediately. If after that time, your client wishes to discuss amendments to the Agreement, we are open to
suggestions.

Thanks

Stacey H. Cohen, Esq.
The Shavitz Law Group, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Tel: (561) 447-8888
Fax: (561) 447-8831

PRIVILEGED AND CONFIDENTIAL

The information contained in this e-mail is subject to the attorney-client privilege and/or the attorney work-product doctrine. If
you are not the intended recipient, nor the employee or agent responsible for delivering the e-mail to the intended recipient, you
are hereby notified that any dissemination or copying of this transmission and any attachments is strictly prohibited. If you have
received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.


EXHIBIT
4

9/25/2007

LAW OFFICES OF

# FRANK J. MCKEOWN, JR., P.A.

CONCOURSE TOWER 1
SUITE 701
2000 PALM BEACH LAKES BOULEVARD
WEST PALM BEACH, FL 33409

FRANK J. McKEOWN, JR.
BOARD CERTIFIED CIVIL TRIAL ATTORNEY
SPECIALIZING IN EMPLOYMENT LITIGATION

Telephone No. (561) 832-5650
(561) 688-9833
(561) 721-3724
Facsimile No. (561) 688-9985

September 26, 2007

*VIA U.S. MAIL AND FACSIMILE*
Ms. Stacey Cohen, Esq.
Shavitz Law Group P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL  33432

Re:   *Sullivan v. Marks*

Dear Ms Cohen:

We received your fax of September 25, 2007.

Frankly, this communication makes no sense.  A settlement is not a settlement until an agreement is executed by all parties.  Therefore my client is not in breach of any agreement.  As to a Motion to Enforce, what do you intend to enforce?

When we found out that your client was directly contacting Ms. Marks customers both in the United States and abroad and was making disparagingly remarks about Ms. Marks and her company. This was a reason we required the amendment to the agreement.  This amendment simply expands to the issue of the counterclaim, including consideration of the non-compete signed by Ms. Sullivan and her use of Mark's customers list which is in her possession.  The reason for this amendment was in fact contemplated in the original settlement which you drafted but you did not take into consideration the alleged counterclaim.  This was the reason we prepared the first amendment and that was before we discovered your client continuing to be involved in making disparagingly remarks about Ms. Marks.  This activity must cease and desist immediately.

EXHIBIT
5

Stacey Cohen
Re: *Sullivan vs. Marks.*
September 26, 2007
Page 2 of 2

It seems all you had to do was have your client, if she is in good faith, stop making disparaging remarks and cease contacting customers of Ms. Marks.

The fact that your client is out of town is of no consequence. In this day and age she must be in a place where she can receive either emails or faxes and all she has to do is sign the amended agreement.

Therefore, I suggest you just have her sign the agreement as amended and we can resolve this matter without any further communications other than to exchange signed amended agreement. Then we will forward the check.

Very truly yours,

Frank J. McKeown, Jr.

FJMcK/mk
Cc: Ms. Marks

EXHIBIT
5